United States. Your Honors, the District Court erred as a matter of law when it set aside the jury verdict in this case. As this Court knows, a juror had inadvertently heard an isolated, cumulative comment unrelated to the defendant or the charges against him, and then made a vague announcement to the other jurors, who by all accounts paid little if any attention. The Court evaluated the impact of these events without applying the proper analysis. Instead of first determining whether the defendant had made a colorable showing of prejudice, and then considering objectively the content of the extrinsic material, the manner in which it was conveyed to the jury, and the weight of the evidence, instead of doing that, the Court focused solely on the subjective impact on the jurors' mental processes. As I argued, this was an error of law. Now, this Court's case is a long line of them, starting with the Lufford case, through Ruggiero, Smith, Sylvester, and Davis, all cited in our brief, prescribed the proper inquiry for a court to engage in when extrinsic material is brought to a juror's attention. What did counsel for the government say about the court? Your Honor, the government cited Ruggiero in its brief. But what did it say in its discussions with the court at the hearing? Well, Your Honor, the court said that Ruggiero says that the question is one of harmlessness, and that once the burden shifts to the government, if the court determines that a colorable showing has been made, that at that point the question is one of harmlessness. Right, but what did the government's lawyer say about Ruggiero, if anything? That's about the extent of what the government said about Ruggiero. The government then made its arguments about why the material was harmless, focusing in this case on two aspects of harmlessness. Did the government explicitly state that another case corrected the standard that was used in Ruggiero? I'm not aware of that, Your Honor. Okay. If there's a I'm not asking about what a case holds of whether or not Ruggiero has been, in fact, corrected. I'm asking if the government represented to the district court that Ruggiero was not the correct standard. Oh, Your Honor, I think I understand Your Honor's question. Yes. Did the government lead the court into error, if the court was led into error? No, Your Honor. Respectfully, I don't think the government did. What the government's argument was, was that cases, subsequent cases have made clear that it is now a two-step inquiry for a court to engage in when extrinsic material has been brought to a juror's attention. The first question is whether the defendant has made a colorable showing, and then the burden shifts to the government to rebut any presumption of prejudice. And that has been the subject of some debate after Ruggiero, but the point is that Ruggiero still provides the proper analysis to apply when determining harmlessness by the government. It seems to me that perhaps it's unfair to say that the government didn't follow Ruggiero's steps perfectly when the government itself was saying that Ruggiero's steps were not to be followed, that they were actually corrected and combined. It's two separate questions, Your Honor, I would argue respectfully. The first one is when does the burden shifting occur? What is the district court required to, when is the district court required to evaluate the colorable showing of prejudice by the defendant? When is it required to engage in a hearing? And when is it required to determine whether the government has met its burden? The separate question is what does Ruggiero, what are the steps it sets forth for the district court to engage in in determining harmlessness? And I'll note that a much later case, the Davis case, reiterates Ruggiero's test and says a district court must engage in these three steps. But I guess Judge Albright's question is did you bring this to the court's attention and try to correct the district judge and say, Judge, you're misinterpreting the case, that's, the burden's not on us, or object, or do anything on the district court level? Your Honor, there was there was nothing to object to until the district court issued its opinion, and that's when we filed a notice of appeal. The argument on the new trial motion, that was the argument, we preserved the argument that a new trial should not be granted because any prejudicial impact was, there was no prejudicial impact, it was harmless. That was the argument the government had to preserve, and we did. Now, only when the district court's opinion came out and the district court engaged in none of the analysis required by this court's cases, that was the error. And that's when the government filed a notice of appeal. So we've preserved our claim. Mr. Schenker, you said that the information that came to Juror Number One, the foreman, was cumulative. But was it really? I know they had heard testimony about grand jury witnesses, but have they ever heard anything about indictments being returned, or people being prosecuted, as was Mr. Mix? Well, Your Honor . . . Why is it cumulative? The point is, Your Honor, that it was not a surprise to this jury that there would be other cases arising from the Deepwater Horizon incident. Now, whether those are investigations or prosecutions, I'm not sure that's really material. The point is that the jury was well aware, including Juror Number One, that there would be other criminal cases arising from the Deepwater Horizon incident. Why were they well aware of that? I'm sorry. Well, for one thing, Your Honor, it was not . . . it was never kept secret during voir dire. Voir dire was very clear that there would be other matters arising from this incident. Were there indictments at the time of this trial about document retention issues? There were . . . yes, there were, Your Honor. There were already indictments that were public about document retention issues? There was one indictment against Mr. Rainey, and there were indictments against . . . there was obviously an indictment against BP, which included an obstruction count, and there were indictments against Robert Caluza and Donald Bedrine. Those did not relate to document retention issues. But the . . . The court had eliminated out any that other people were being prosecuted. In fact, the jury was not supposed to know that other people were being prosecuted, was it? Well, there's a difference between what was presented during the trial and what was kept from the jury's attention as far as evidentiary matters, relevant evidentiary matters, and what the jury just knew. Why did the jury just know something that was purposefully kept from them at trial? Your Honor, there are two separate questions. What Juror Number One overheard was not that there would be prosecutions related to obstruction of justice or the deletion of text messages. Juror Number One never indicated that that's what she heard or that's what she took from these statements, only that there would be other trials relating to the upcoming events of this BP fiasco. That's it, the Deepwater Horizon disaster. Eleven people were killed, the biggest oil spill in the history of America. There is no question that the jurors in New Orleans were aware of this incident, were aware that there would be other cases relating to this incident, and would even be aware that there were other prosecutions related to this incident. There was no effort in voir dire to eliminate jurors who knew those facts. Their jury instructions, the district court's preliminary jury instructions mentioned that there will be— But cumulative refers to evidence. Cumulative doesn't refer to things outside of—you can't say something's cumulative because it's in the common sense or outside knowledge. It has to be cumulative evidence, and I thought that you already agreed that it wasn't in the evidence because the court had eliminated out, and you believe the government complied with eliminate. What the district court eliminated was any reference to conspiracy or acts by other individuals relating to the obstruction of justice. That was kept from the jury, and I'm not saying that that's what the jury learned from this information. What the jury learned from this information was that there would be other trials related to the quote-unquote BP fiasco, and that's what this agent testified, that she was testifying before the grand jury on other matters. The district court instructed the jury that there will be other matters related to this Deepwater Horizon incident, and you are not supposed to consider them when you deliberate. So the jury was well aware of all of this. This information— Was Jonathan Sprague indicted? He was not, Your Honor. He was not, so there's no basis— So where's the inference that all these people would be indicted if he's the one who was exchanging emails with Mr. Mix, and some of his were missing also? There is no inference— No, you're implying that the jurors would presume that all these people would be indicted. No, that's not what I'm— Well, that's what you said. Maybe you can— What I'm arguing, Your Honor, is that— Listen to what you're saying. The fact that there would be other cases relating to the Deepwater Horizon disaster was not a surprise to this jury. That's all I'm saying. I'm not saying it had anything to do— in fact, I'm saying that the jurors would not have taken away that it had anything to do with Jonathan Sprague or obstruction of justice or deletion of text messages, but we have to focus on what juror number one actually heard and how she characterized it. It's in black and white in her hearing testimony, and she said that it had to do with the BP fiasco. She didn't say it had to do with obstruction of justice, deletion of text messages, anything like that. Well, the person that juror number one overheard was in an elevator leaving the hearing. Was this person not in attendance at the trial? Your Honor, there's no indication that that person was leaving the hearing. Maybe you can presume that. I don't think so, Your Honor. The juror said she got onto an elevator and the person was already on the elevator. How— I don't see how— and the district court never found that this person had left this hearing. Judge Duvall conducted a pretty extensive post-trial voir dire of the jurors, and he was very convinced that there was prejudice. So why should we not be respectful of the discretion that he has to make these determinations after evaluating whether the jurors had appropriately avoided discussing deliberations? Two jurors violated that during interviews. They discussed deliberations. So why can't— why wouldn't that rebut a presumption that they had followed his specific instructions? Well, Your Honor, two things. First of all, the district court still has to apply the correct law, and he did not, with respect. And if he didn't, that's an abuse of discretion. And what's your best case for that? Your Honor, Rubiero, Davis, Smith. You're still relying on Rubiero? All right. Yes, we are, Your Honor. It is still good law. It was cited by this court more recently in the Davis case. It is still good law. The district court— Exactly how did— I'm sorry. Go ahead and answer. Well, the government lawyer said at the hearing that another case had corrected the standard that was used in Rubiero, which is exactly what Judge Elrod was trying to talk to you about. Yes, Your Honor, and what I responded, and I hope— hope I conveyed that what the government was correcting was the district court stated that once there is any introduction of extrinsic information, the court must immediately conduct a hearing and presume prejudice. And what the government was correcting was that that's not the case. And to the extent Rubiero suggested that, the government was saying that that's not correct anymore. The part of Rubiero that prescribes the three inquiries the court is to engage in once the burden shifts to the government to rebut prejudice is still good law. And the government maintained that, and it maintains that now. And Rubiero was cited again in the Davis case, which is more recent. I'm not sure what else I can answer to the court other than to say that we have maintained that Rubiero prescribes the objective standard that the district court is to apply. Did you even mention the factors of Rubiero in the brief before the district court, in your complaint to the district court? Did you even say, these are the factors and you failed to apply factor two? Your Honor, the brief was before the district court's opinion. Did you, I mean. We couldn't say that the district court failed to do anything when. Or did you even mention these three factor tests? We cited the case and then we argued why the evidence was not, was harmless, Your Honor. When we cite a case and it prescribes a standard to the district court, I think the government and this court should presume that the district court is aware of the standard it is supposed to apply and should apply that standard. I don't think the burden is on the, the government does not waive a claim by not walking the district court through the test it's expected to apply if the district, if the government has asked the court to apply the test. But it seems. Go ahead. Are you saying that the presumption of prejudice hasn't been triggered in either situation, even in juror number one who actually heard this? She's in a different position than the other 11 people. Don't you think that there was a presumption of prejudice in that situation where one juror did overhear the actual? Your Honor, we would argue that even the statement the juror number one heard was not colorably prejudicial. Because, and the district court never analyzed this, looking at the content and the nature of the statement. It had nothing to do with the defendant. It had nothing to do with his crimes. The district court never analyzed what it would lead a reasonable juror to conclude about this defendant and the crimes with which he is charged. But, we did argue that even assuming it's colorably prejudicial, the district court was then required to go through the three steps in Ruggiero and Davis to determine whether the government has rebutted any presumption of prejudice, and it did not do that. There's no indication in its opinion that it went through any of the steps. Well, does it have to say, I'm going through the steps, or does the court, it did consider the content of the extrinsic material. It absolutely considered the content of the material. I disagree, Your Honor. It never analyzed what this, what this information would lead the average juror to think. Well, it led the average juror to convict after the Allen charge was given, and apparently the information came to the juror between the time, the Allen charge and the time of the pretty, uh. Your Honor, respectfully, that begs the question, suggesting that because the jury convicted, it must have presumed that this material was, well, was prejudicial. That begs the question. The district court is supposed to objectively look at the information and determine what it would lead an average juror to think about this defendant and his crimes. The fact that other individuals might be prosecuted for other acts related to the Deepwater Horizon would not lead any reasonable juror to conclude that Mr. Mix corruptly deleted text messages. I don't, I, I don't necessarily agree with that. If, if the jurors were thinking that it could be Mr. Sprague and that there was really some secrets in these documents and that they were in Mr. Sprague's emails, but they couldn't peer that information, rather than these emails, most of which are fairly benign and which tell things that are already in other documents that are in the record, um, that, that there would be something more. The jurors would be saying, I mean, it's very reasonable to say that they would be looking for something more, some more there, there about these particular documents. And why would this guy be singled out? Um. First, it's speculation to assume that these jurors would have thought that this vague information in the elevator had anything to do with Mr. Sprague or deleting text messages or obstruction of justice. It was about the BP fiasco. I see my time has run. You saved time for rebuttal. Thank you. Governor is perhaps most regret  Governor15 years May it please the court. Doug Holder, Greenbaugh on behalf of Defendant Kurt Netflix. You have to state your name for the record. Doug Hallward, Dreamire. The district court's order is, of course, reviewed for an abuse of discretion precisely because, as the court has noted, the district court sat through the entire trial, heard all of the evidence, ruled on the motions in limine, instructed the jury when deadlocked, and interviewed each juror in great detail individually after learning of the extrinsic influence. And the trial court found that the jury, quote, and this is on record excerpts 143 to 44, the jury did not render its verdict based solely on the evidence and arguments presented at trial outside irrelevant sources likely affected the jury's deliberations and verdict. And Mr. Mix is therefore entitled to a new trial. What do you do with the government's argument that it's automatically abuse of discretion because these particular three factors were not gone through in detail according to the government? Well, um, I think first of all, uh, the government never argued, organized its argument around these three factors. So it's not surprising that the district court didn't organize its opinion around those factors either. The, the, what's referred to as the Ruggiero factors, Ruggiero itself relied on this court's decision in Luffred. Luffred articulated all of those three factors, but Luffred itself did not go through any extensive analysis of each factor. In fact, there's no reference to the weight of the evidence in Luffred. So I don't think that it's, uh, that this court's opinion suggests that it is some kind of checklist that the district court must do. And if the government was going to argue that, then it was of course incumbent on the government to make that point. When they say they cited Ruggiero, they did, but they cited it for a different proposition, a different page of the opinion. But this really wasn't a case where the district court didn't understand what the relevant standard was. The defense counsel had cited the appropriate page Ruggiero, defense counsel cited the factors. And for example, with respect to weight of evidence, specifically argued that that factor weighed in favor of the defendants. Because of course, this was a case in which the jury was deadlocked. Immediately before giving the case to the jury and ruling on the rule 29 motion, the district court actually stated that it was not a simple task to rule on the rule 29 motion. So this judge knew that this was not the kind of overwhelming evidence case that are referred to in a footnote in the government's reply brief. This was a close case. Now, of course, the district court has ruled that if one takes all of the evidence and the most favorable to the government that on, on rule 29, he was not going to set aside the verdict, but that's not the inquiry that's before the court under an extrinsic evidence. The government seems to misunderstand that in its brief, doesn't it? Yes, I think so. Your honor, because they, they reference and they quote from rule 29 order. And I wanted to bring this up. This is in the reply brief on page 23. Uh, it goes through a number of bullets findings. The third bullet in particular, which says any rational trier effect could have found beyond a reasonable doubt that mix acted knowingly and dishonestly. That quote is immediately preceded. It's part of the same sentence, viewing the evidence in the light, most favorable to the prosecution, a rational trier could have found beyond a reasonable doubt. That is a far cry from finding that not giving it that, uh, that color, that lens instead viewing all of the evidence and adopting the presumption, not adopting the presumption in favor of the verdict, but instead putting the burden on the government to prove that this was harmless, that there was no reasonable possibility of prejudice is an entirely different inquiry. And so when the court says, and I think that your, your honor's question earlier was right. The court does address each of those elements of Ruggiero that we doesn't call them that certainly the content of the statement that the juror one overheard. And I want to be clear. What she said she overheard was that Kurt mix is not the only person being it's a comment that ties it to Curt mix. And I do think that the ease that the most obvious inferences that she heard it from somebody who was attending the Curt mix trial, making a comment about Curt mix, not being the only person. The judge asked whether she understood that to be a reference to other BP employees. And she said, yes. She later said, and this is at record absurd one 58 that what she heard was about the trial. So again, in her mind, clearly this linkage between what she heard and what was going on at trial. And because, and this was hotly contested, there were motions and limine that the judge granted over strenuous opposition from the government, excluding any evidence of wrongdoing by others at BP and specifically excluding any evidence that John Ethan Sprague had deleted the texts, the 17 unrecovered texts. Now the government, they walked right up to that line with their witness. Mr. Polis say who said, well, they're here. All of the, the, the texts and the ones that say active John Sprague, those were the ones that were found on John Sprague's phone. The ones that say not recovered. Well, they were not recovered. I mean, juxtaposition right there. And in closing, the government comes back to that. The, this case was in some part about where is John Sprague. John Sprague was not indicted, but he was under threat of indictment. Did he testify? He did not testify because he was under threat of indictment. Right. In fact, didn't the, in the closing argument, didn't they say, now remember by this time, Mr. Sprague's text messages from that time period, were gone off the iPhone. They, they, they did. They came right up. Of course, that's not evidence, but that's in the closing, in the rebuttal closing argument where you mostly find, that's where you find all the best stuff is in the rebuttal. That's where we know what the government thought its case was about. Now that wasn't evidence. So this is a cumulative evidence, but it was certainly argument and inference. They wanted the jury to draw. And so when the foreperson of the jury steps into the elevator and it overhears, Kurt Mix is not the only one who's going to be prosecuted. The clear inference is that the other one is John Sprague. And so, and, and, and this, the judge, I think he, the government is certainly faulting him for not abiding by rule 606B. In fairness to the district court, I think the district court was scrupulous in adhering to 606B. He excluded statements in the affidavits that he said should never have been introduced at the hearing. When any juror started to go there, started to say how it was that what they overheard did or didn't affect their deliberations. He said, I don't want to go there. Juror number one started to do that. He said, I don't want to hear that. And then didn't she explain that she was emotionally convinced or that this made her feel better? So why would that not be a violation? Well, Your Honor, I think that the, that you have to distinguish and I think the district judge did distinguish between two uses of that information. That information was properly elicited by the court with respect to the statement made to the other jurors, because that was how extrinsic information was communicated to them. The district court called it vouching for the defendant's guilt. She had overheard evidence that supported the defendant's guilt. She's vouching for their guilt. He needs to elicit that. He needs to reference that with respect to the impact on jurors two through 12, because that's the form of the extrinsic evidence. Is it enough that there was prejudice as to one juror to grant a new trial? It is said that we were to say that the other 11 weren't as prejudiced as juror number one. Is it enough to just have juror number one that was prejudiced to declare a new trial because Mr. Mitz was entitled to a trial by 12 impartial jurors, 11 would not do as we cite in the brief. And I think that they do stand independent, really, the two forms of extrinsic influence. I think juror number one is in some ways the most obvious. Now the government cites the fact that the district court relied on the fact that the juror number one said she was troubled. Now that's different from saying that it helped her, made her more comfortable about being guilty. He recounts that the district judge, only when discussing the impact on jurors two through 12. When he's discussing the impact on juror one, he focuses laser light on the fact that she said she couldn't get it out of her head. Now that is not barred by 606B and it's not inappropriate to take account of. And I think this court's decision in Lufford is the best example of that. In Lufford, the jury specifically requested that they be given a copy of a chart that the government had utilized during trial and they had it before them for about half an hour. The government argued, um, after it was taken back that there should be no trial, mistrial, uh, neutral because they, they, they only had it for half an hour. And, and the, this court said, no, they asked for it. There's no better evidence that they were attributing significance to this. Now they didn't ask the jurors what significance they attributed to it. They didn't ask about how it affected their deliberations, but the objective fact that they asked for it was clear evidence that they were attributing significance to it. And the Supreme Court's decision in Remmer is perhaps even closer in fact to our case because there the juror after the trial was over said to another juror that he felt what felt under a tremendous pressure and the Supreme Court relied on that statement, not how it's affecting him, but that it was having some effect. They couldn't get it out of his head. In effect is what he was saying. It was weighing on him and the Supreme Court relied on that to find that he was troubled by it. Now that's not what he said. He said he was under tremendous pressure here. Likewise, with respect to juror number one, the district court properly focused on the fact that she couldn't get it out of her head. Now, of course she said that, but we also know that from objective facts because it was three days after she had overheard the statement that in the jury room at the most critical moment of their deliberations when they were already deadlocked, she brought this back up. This was not something that she overheard and immediately put out of mind. This was something that three days later it was still with her and somehow she thought it was the kind of thing she should introduce into the rest of the jury room. How does that affect a determination of prejudice? Um, when you look at the timing of the, of the verdict, the guilty verdict, that's returned, the judge did note, and then in terms of the manner, et cetera, the other factors in Ruggiero, he references the fact that the verdict came very quickly after juror number one said to the other jurors that she knew something they didn't know and it made her more comfortable about guilty. He, he, he rightly cites a number of objective facts. This is the foreperson, this is the leader of this jury as the judge has instructed the other jurors. She's introducing it at the most critical moment when they're already deadlocked and they come back with their verdict very quickly thereafter. These are all objective facts that the judge relied on to conclude as a matter of fact, that the jury had not solely relied on the evidence at trial and convicting Mr. Mitz. And there's... Help me with the, um, the counts. Are there, are there three? Two counts. Two counts. And one is an acquittal and one, one is the con, is the conviction that we, so this is only involving the one count. That's right. And with respect to the second count, the second count had to do with a text stringing exchanged with a man called Wilson Araby, an assistant and friend of Mr. Mitz. Um, the chief theory that the government had of corrupt intent with respect to that text string had been excluded during trial by the district court and had told the jurors they were not to consider that theory of corrupt intent. And so by the time, um, the, the trial was coming to a close, the trial judge referenced the fact that he didn't really know what the government had with respect to intent on the second count. So the fact that they acquitted on the second count, I don't think tells us anything about the impact that these influences might have had on their deliberations on count one. And I think with respect to, um, jurors two through 12 could focus mostly for juror one. I think that the Parker case, the Supreme Court decided is the most relevant because there it was a bailiff who said about the defendant, Oh, that wicked man, he's guilty. Now we don't know what the bailiff knew that the juror did not know on which the matter. Likewise, it doesn't matter that jurors two through 12 did not know on what information juror one was basing that opinion. All they know is that she has some information they don't. And of course, there was so much that they would have thought she might have, that would have been really critical, including about John Sprague and about those texts and what was in those texts or is John Sprague also going to be indicted for deleting those texts. And so when they hear that their foreperson has said, I know something you don't know, and it makes me comfortable that he's guilty. Now they thought that as long as they didn't know that underlying information that she had, that they had not been influenced by the extrinsic information. But we know from Parker and the district judge knew that it's not so simple as that, that she of course had introduced this new dynamic into their deliberations. The deadlocked jury was given an Allen charge about needing to try to reach consensus. And they know that one of their member is not really open to persuasion because they don't know how to, uh, how to address this issue, that this information that she knows that they don't, they can't engage on that. So of course their dynamic is going to be affected by that. Now, um, judge Prado had asked you some questions about what if she was the only one who painted in this way, allegedly, uh, if she had kept her mouth shut, she would still be having this pressure in her head, but nobody would know this. So we wouldn't have this case, would we? But it would still, she would still have the same prejudice that you told judge Prado. I think that's right. Although, you know, what, what I was thinking about that question in advance, um, what I thought of is, well, what would have happened if at this point in the trial, the juror number one had gone to the district judge and had said, I heard something in the elevator and he had said, well, can you put that out of your mind? And she said, no, Your Honor, it's three days later and I can't stop thinking about it. Well, surely he would have removed her from the deliberations and rightly so because she was not. And we know that that's not an inappropriate question to ask her. Davis, which the government relies on, they rely on the fact that jurors were asked, can you put it out of your mind? Can you decide solely on the evidence? Yes. And the judge rightly relied on that assurance. But if you're number one had truthfully said, I can't get it out of my mind. Three days later, surely he would have removed her. And without any feet, they had not done. So we would have been here on appeal, arguing that as a matter of law, we were entitled to a new trial. Let me ask you something. Um, to me, the elephant in the room is the fact that defense counsel violated the directive not to contact jurors. Um, what, what's been done about that? Have any complaints been made to the bar association? Well, I don't believe so. First of all, I don't think that it was, was it covered by judge Duvall? And then was he concerned about it? Judge Duvall that first of all, the instruction was to the, to the jurors. And judge Duvall certainly understood that the council should have, should have understood that as meaning they shouldn't, uh, shouldn't contact the jurors. The contact was solely for the purpose of getting feedback on counsel's performance. So it was not for the purpose of trying to undermine the jury's verdict. What about the local rule? That's not an instruction to the jurors. The local rule has been adopted since this trial. It was affected December, 2014. So this issue will certainly not ever arise again in that court. So the council did not violate a local rule at the time. No, Your Honor. The only question was whether counsel had violated the district court's own instruction and the district court whose instruction it was, was seemingly most frustrated by the fact that counsel had not informed him immediately of what they had learned so that he could have immediately taken his own steps to investigate the situation. And what he determined the appropriate remedy for that was to exclude any consideration of the affidavits themselves and cited other cases that had done likewise and to rely exclusively on the record that had been developed by the judge himself. And so I don't think it would be appropriate to visit any further remedy given that that was the remedy the judge imposed for his own order. If there are no further questions. Just one, the government raised a hypothetical where a juror falsely tells the rest of the jurors, I'm, I'm convinced of my vote because of some information. Is that, is that what we have here? Well, well, of course it's not what we have here because juror number one did overhear something that that was in light of the theories of the case in light of the motions in lemonade and how the government argued that that was precisely the kind of evidence they needed to show Mr. Mix's intent relevant. And so we don't have that hypothetical here. But as to the hypothetical, I, I again go back to the Parker case because we don't know whether Parker in Parker, the bailiff simply made that up or whether he actually was basing that on some extrinsic evidence. And likewise here we don't know whether you know, if in the hypothetical we wouldn't know whether the juror had made it up. But I do know that in the Howard case that's discussed in the briefs, this court said that the rule is the same, whether it's a bailiff or a juror. So I think the Parker rule would apply. Are you sure that the local rule was not passed till the fourth till till after the trial? Because the opposing council cites in their brief, some citation to a 2000 Eastern district of Louisiana case that says that they were applying the local rule 47.5. I'm sorry, your honor, the local rule that was in place at the time was a civil rule. There was no corresponding rule in the criminal local rules. And in, in many jurisdictions those rules are different. And so, but they had applied it in a criminal case. There was an unpublished decision applying the civil rule to a criminal case, but there was no rule to that effect. Thank you. All right, Mr Shanker. Your honors, my colleague points to the weight of the evidence and argues that the district court was applying the rule 29 standard. Well of course the district court was applying that standard when it denied the defendant's rule 29 motion, but the district court simultaneously denied the defendant's rule 33 motion based on the weight of the evidence and applied the exact standard that Mr. Mix now argues would apply to the weight of the evidence analysis under Ruggiero and the district court. Mr my colleague says that the district court or that the government points to findings that the district court made in its rule 29 ruling while the district court itself adopted and incorporated those findings into its rule 33 motion. And the district court said that under the rule 33 standard, which is more lenient than the rule 29 standard, that the evidence did not preponderate against the verdict and that this was quote unquote not a case where the evidence tangentially supported the verdict. And I'll, I'll point the court to the government's reply brief pages 23 to 24. The district court could not be more clear about its conclusion that this was not a close case. The district court court's own words. And as my colleague said, the district court sat through the entire trial. It could not be more clear about the weight of the evidence in this case. I don't understand that there's a difference between tangentially support and close case though. Well the court said this is not an instance where the evidence tangentially support. Tangentially support though is far down. Close case is close to the line and all you have to get is close case. Okay, your honor. But even if we just take the fact that the district court denied the rule 33 motion based on the weight of the evidence, which is the same standard that would apply under the third prong of Ruggiero, the district court would necessarily have to conclude that the weight of the evidence prong under Ruggiero cuts in favor of the government. There's no other way the district court could reach a different conclusion. And if that's the case, if the weight of the evidence cuts in favor of the government, which it does, then the district court would have to counterbalance that with an extremely prejudicial statement. But it never determined that this statement was prejudicial to the objective average juror. It only relies on timing of it. That's the,  The timing is so extreme. So there's two things, your honor. There's the timing of when juror number one heard the statement, which was not during deliberations. It was during trial. Now the timing of when she imparted this information to the other jurors is a subject of discussion in the, in the briefs. And I will argue your honor that my colleague respectfully has relied on information that the district court excluded, that the district court did not consider in light of defense counsel's violations. And I will note your honor that the district court explicitly found that defense counsel violated the local rule and court orders. The local rule was in effect at the time of this case. There is a new local rule now, but there was no local rule in effect at the time. Okay. That they say that the local rule was for civil and you don't point that out in your brief at all. You act like it was criminal. Well, I say the, the case, there's a case that applied in the United States versus Smith, but you don't say applying the local rule, the civil rule in a criminal context. I mean, I don't think it's very, I don't think it's explained well by you at all when you're accusing them of violating the rule. I'm sorry. On page 17 of our brief, the parent, that's where I am applying local rule 47.5 in a criminal case. But you don't say it in civil rule in a criminal case, something that would tell me that the rule was really a civil rule, but it was being used in, but let's not take all your time on that. So go ahead. Okay. So your honor, if we exclude as the district court did what defense counsel put in their affidavits and their motion about when this information was imparted by juror number one to the jury, then we can't conclude that it came two hours before the verdict. The jury said that they had been deadlocked since before lunch and the black and white of the, of the hearing of the juror testimony at the evidentiary hearing was that the information was conveyed at some point during the deadlock. That's a period of four or five hours or even six hours before the jury reached its verdict. All right. Thank you, sir. You're out of time. Thank you.